Sydney HIRSHON, Appellant,

v.

Joseph M. WHELAN, Trading as Cecil's Bakery, Appellee.

No. 1578.

Municipal Court of Appeals for the District of Columbia.

Argued Dec. 6, 1954.

Decided March 1, 1955.

Reargued on Rehearing March 28, 1955.

Decided April 27, 1955.

Mark P. Friedlander, Washington, D. C., for appellant.

Bartholomew B. Coyne, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellee, hereafter called the buyer, purchased a restaurant-bakery business from appellant, hereafter called the seller, and after operating the business for about two months abandoned it and brought this action to rescind the sale and to recover that part of the purchase price he had paid and damages for losses alleged to have been sustained in the operation of the business. The trial court granted the relief sought and the seller has appealed.

The trial court found that the sale was induced by false and material representations of the seller as to (1) the outstanding debts, and (2) as to the restaurant license. With respect to the outstanding debts it is conceded that the seller executed an af-

fidavit under the Bulk Sales law [1] in which he stated that there were no debts against the business, except one specified debt which the buyer had assumed to pay, whereas in fact there were numerous unpaid debts which had been incurred by the seller in the operation of the business. The seller argues that because he thereafter paid the debts the buyer was not injured by the misstatement as to their existence, and that this constituted no ground for rescission. Without deciding the merits of this contention we turn to the second misrepresentation.

Prior to the sale the buyer inquired of the seller as to the restaurant license and was told that "everything was in shipshape as far as the Health Department was concerned." The seller did not disclose that he was then operating under an expired license, that a few months before the Health Department had ordered certain improvements to be made, including the admonition to "Put entire premises in a good sanitary condition," that he had had license applications disallowed because of failure to comply with health regulations, and that he had been allowed to operate without installing a vestibule for the ladies toilet on his excuse that he did not have the money to install it. When the buyer applied for a license he was instructed that in order to obtain it he would have to install a vestibule for the ladies toilet, ratproof the premises, make certain other improvements, and generally place the premises in a good sanitary condition. To have these things done would have required a substantial outlay of money.

On this state of facts the trial court was justified in finding that the affirmative representation that everything was "shipshape" as far as the Health Department was concerned, and the failure to disclose prior difficulties in obtaining a license constituted a false and material representation which induced the buyer to enter into the contract and constituted adequate grounds for rescission.

The question of the amount of recovery is more difficult. The court allowed recovery of $2,990, representing $1,750 paid by the buyer as part payment of the purchase price and $1,240 as damages. On rescission of the contract of sale it is clear that the buyer was entitled to recover the purchase money. It is not so clear that he was entitled to damages in addition thereto. One who has been induced by fraud to enter into a contract may either rescind the contract and recover what he has parted with or affirm the contract and sue for damages caused by the fraud. He cannot do both, because the two remedies are inconsistent and mutually exclusive.[2] However, we think the rule denying damages in case of rescission must be limited to denial of damages which in effect permit one to rescind a bargain and at the same time claim the advantages of the bargain. Damages incidental to the contract and caused directly by the fraud may be allowed upon rescission.[3]

The damages allowed in this case were for losses incurred by the buyer in the operation of the business. The trial court, as before stated, found fraud in two respects, but the record shows that neither the misrepresentation as to the outstanding debts nor the misrepresentation regarding the license interfered with the buyer's operation of the business during the short time he was in possession. His failure to operate at a profit during that time is not shown to have been the result of the fraudulent representations and may have been due to many factors wholly unconnected therewith. In our opinion his losses cannot be considered a direct result of the fraud and are not recoverable.

1. Code 1951, § 28–1701 et seq.

2. United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261; Durham v. New Amsterdam Cas. Co., 4 Cir., 208 F.2d 342; Simmons v. Brooks, D.C.Mun.App., 66 A.2d 517.

3. See Annotation 120 A.L.R. 1154; 17 C.J.S., Contracts, § 442; Williston on Contracts (rev. ed.) § 1525.

The judgment will be modified by reducing it from $2,990 to $1,750 and as so modified affirmed.

## On Rehearing

After our decision was rendered we granted motions of both appellant and appellee for rehearing. Appellant's motion raised the question of the jurisdiction of the trial court. This question had not been raised in the trial court and was not raised in brief or argument on the original hearing in this court. For that reason appellee urges that we decline to consider it. Although the general rule is that a question first raised on motion for rehearing will not be considered, an exception is made when the question is of a jurisdictional nature. We cannot ignore a jurisdictional question even when first called to our attention on motion for rehearing.[1]

With exceptions not here pertinent, the trial court's civil jurisdiction is limited to "civil actions, including counterclaims and crossclaims, in which the claimed value of personal property or the debt or damages claimed, exclusive of interest, attorneys' fees, protest fees, and costs, does not exceed the sum of $3,000." Code 1951, § 11–755. In the exercise of that jurisdiction the trial court has equitable as well as legal power,[2] but its jurisdiction in any civil action is limited by the statutory jurisdictional amount.[3] Thus, we have held that the trial court is without power to grant reformation of a lease when such reformation would reduce the total rent by more than $3,000.[4]

Where, as here, a statute limits the jurisdiction of a trial court to the amount "claimed," it is almost universally held that the jurisdiction of the court to entertain an action is determined by the amount and nature of relief claimed in the complaint.[5] In the present case appellee's amended complaint alleged that he had been induced by appellant's fraudulent misrepresentations to purchase a business for a price of $15,650, the major portion of which was represented by promissory notes secured by a chattel deed of trust. The complaint asked (1) for rescission of the contract of purchase, (2) for a money judgment of $2,990, (3) that defendant be required to restore plaintiff to his status quo, and (4) for such other relief as was just and equitable.

Although the case was presented to us on the original hearing as simply an appeal from a money judgment of $2,990, it now seems quite plain that appellee's claim was one for rescission of a contract calling for the payment of more than $15,000, and as incidental to such rescission recovery of $1,750 paid on account plus damages of $1,240. The only judgment entered was one for $2,990, but the trial court in its memorandum opinion stated: "The Court rules that the contract be rescinded and finds that the plaintiff suffered damages in the amount of $2,990.00."

Appellee now insists that his complaint did not seek rescission of the contract, that he had himself rescinded it before bringing his action and that his complaint merely sought legal recognition of that which he had done, and that the only relief sought was a monetary recovery within the jurisdiction of the trial court. Had appellee actually framed his complaint as one upon a rescission instead of one for a rescission, we might have a different question.[6] The

---

1. 4 C.J.S., Appeal and Error, §§ 1421, 1448.

2. Klepinger v. Rhodes, 78 U.S.App.D.C. 340, 140 F.2d 697, certiorari denied 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568.

3. Friedman v. International Association of Machinists, D.C.Cir., 220 F.2d 808.

4. Psarakis v. Dukane, Inc., D.C.Mun.App., 84 A.2d 543.

5. 14 Am.Jur., Courts, § 210; 21 C.J.S., Courts, § 54a. See also, Goldberg v. Roumel, D.C.Mun.App., 40 A.2d 253.

6. See Philpott v. Superior Court, 1 Cal. 2d 512, 36 P.2d 635, 95 A.L.R. 990, and annotation following; John Berg, Inc., v. Associated Spinners, 201 Misc. 627, 108 N.Y.S.2d 388; Cf. Burcum v. Gaston, Tex.Civ.App., 196 S.W. 257; Gossett v. Manley, Tex.Civ.App., 43 S.W.2d 622.

fact, however, is that the complaint did ask for rescission of the contract and did ask that defendant be ordered to restore plaintiff to his status quo, which presumably would or could have required surrender and cancellation of the outstanding notes. We cannot escape the conclusion that the complaint sought relief beyond the power of the court to grant and that the court should have declined to entertain it for lack of jurisdiction.

This conclusion makes it unnecessary to consider the points raised in appellee's motion for rehearing.

Our former judgment is vacated, the judgment of the trial court is reversed, and the case is remanded to the trial court for dismissal for lack of jurisdiction.